IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

| | |
|---|---|
| TALON C. SILVERHORN<br>    Plaintiff,<br><br>v.<br><br>COLONIAL WILLIAMSBURG<br>FOUNDATION, et al.,<br>    Defendants. | Civil Action No. 2:19cv628 |

## AMENDED COMPLAINT

Plaintiff, Talon C. Silverhorn (hereinafter "Mr. Silverhorn"), through undersigned counsel, sues Colonial Williamsburg Foundation and Felicity Meza-Luna and states as follows:

### PRELIMINARY STATEMENT

1. Mr. Silverhorn has received notice of his right of action against Defendants, issued pursuant to his filing a charge with the United States Equal Employment Opportunity Commission. A copy of Mr. Silverhorn's Notice of Right to Sue is attached hereto as Exhibit "A" and is incorporated herein by reference.

2. This is a civil action brought by Mr. Silverhorn under § 706(n) of the Civil Rights Act of 1964, 42 U. S. C. § 2000e-5(f), which confers original jurisdiction on this Court over all actions authorized by Title VII of the Civil Rights Act of 1964. This action states federal claims against Defendants for discrimination on the basis of hostile work environment sexual harassment under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, et seq.

3. This action is brought by Mr. Silverhorn to secure redress for Defendants' violation of his civil right to be free from workplace discrimination and harassment on the basis of his sex. Mr. Silverhorn is also of a protected class as a Native American male. Federal law prohibits harassment in the workplace against any of the classes of employees protected under federal and state discrimination law. Mr. Silverhorn has been subject to illegal and intolerable conditions, including statements and other behaviors of his supervisor and fellow employee, that created an offensive and hostile atmosphere. Such behavior and actions were supported and ratified by

management of the Colonial Williamsburg Foundation (hereinafter "Foundation"). Foundation failed to take all reasonable steps necessary to prevent the occurrence of discrimination and harassment. To the extent a policy exists that would expressly prohibit such an intolerable workplace, the system was ignored and failed to protect Mr. Silverhorn. It appears that despite repeated complaints there was no investigation or reasonable steps taken to prevent or remediate such behavior.

4. Foundation had a duty to take prompt corrective action. Inaction following notice results in employer liability. At all times mentioned herein, Defendants were acting in a managerial and supervisorial role with full knowledge of the conduct and behavior described.

5. Mr. Silverhorn seeks compensatory damages, attorneys' fees, and costs.

## THE PARTIES

6. At all times relevant to this action, Mr. Silverhorn was, and remains, a resident of Williamsburg, Virginia and is a citizen of the United States of America. At all times relevant to this action, Mr. Silverhorn was employed by Colonial Williamsburg Foundation located at 101 S. Henry St., in the city of Williamsburg, in the state of Virginia, in the Eastern District of Virginia.

7. At all times material to this Complaint, Defendant Colonial Williamsburg Foundation (hereinafter "Foundation") is a Virginia non-for-profit educational institution that operates a living history museum. Foundation employees approximately 3500 employees and is located at 100 Visitor Center Drive, Williamsburg, Virginia but receives correspondence at P.O. Box 1776 Williamsburg, Virginia 23187-1776. Foundation is a recipient of federal financial assistance as well as state funding.

8. At all times material to this Complaint, Defendant Felicity Meza-Luna (hereinafter "Meza-Luna") is an adult resident of Williamsburg, Virginia. The Defendant Meza-Luna was at all times, relevant to this case, employed by and an agent of the Foundation in this matter. During all of the actions complained of in this case, Defendant Meza-Luna was acting in the scope of her employment with the Foundation.

## JURISDICTION AND VENUE

9. Jurisdiction over these claims is invoked pursuant to 28 U.S.C. § 1331, 1332, 1343, and 1367.

10. Additionally, Mr. Silverhorn invokes the supplemental jurisdiction of this Court to hear and decide claims arising under the referenced state law pursuant to 28 U.S.C. § 1367.

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391 (b).

12. Plaintiff demands a trial by jury pursuant to Fed. R. Civ. P. 38(b).

## FACTUAL ALLEGATIONS

13. Foundation operates a 301-acre living history museum in Williamsburg, Virginia, where Foundation employees interact personally with visitors to create an authentic 18th Century environment. Foundation employs Historic Interpreters who are viewed as a mix of historian, actor, and tour guide for visitors to the museum.

14. Historic Interpreters portray what life was like for men and women in Colonial Williamsburg through their costume and speech. As part of the interpretation, Historic Interpreters may portray many different scenarios requiring two employees to act as husband and wife, father and daughter, or two friends. Specifically, Native American Interpreters provide a third person interpretation of life in the 18th century, providing relevant information from a modern-day setting. Actors are afforded much liberty with their interpretations, allowing the actors to improvise the interpretation and lead the subject matter of the interpretations.

15. As part of the historical interpretation, Foundation commissions a Native American Interpreter Unit which consists of five Native American Interpreters who are supervised by Ken Treese (hereinafter "Treese"), Manager of Interpretation and Professional Development.

16. Mr. Silverhorn joined the Native American Interpreters Unit in May 2017.

17. Mr. Silverhorn's duties include acting and appearing as a Native American from the 18th century. His position requires him to wear period clothing, including a breechcloth and leggings which leave the legs bare.

18. Foundation provides a dressing area for the Interpreters to change from their normal clothing on location before and after the completion of their time at work.

19. Throughout his tenure with the unit, Mr. Silverhorn performed his duties as expected and always met or exceeded the expectations of Foundation.

20. The Native American Interpreter Unit also employed a female employee, Felicity Meza-Luna (hereinafter "Meza-Luna").

21. Mr. Silverhorn and Meza-Luna worked together without incident for approximately a year and half. However, during that time, there were many incidents between Meza-Luna and other Foundation employees that were brought to the attention of Foundation.

22. Beginning in August 2018, Meza-Luna started singling Mr. Silverhorn out during

interpretations by making colorable statements that could be construed as sexual in nature. Mr. Silverhorn requested that Meza-Luna ceased this practice, but she refused.

23. Meza-Luna's behavior continued to escalate with the events described as followed:

  a. Meza-Luna consistently made remarks about Mr. Silverhorn's gender and made numerous statements to Foundation guests, in the breakroom, staff training, and at Foundation meetings that "ALL" men rape and abuse women;

  b. Meza-Luna continuously stated that there was too much testosterone around and made statements about men's presence which were offensive;

  c. Meza-Luna often stated that she should carry pink glitter around to throw on Mr. Silverhorn and other male co-workers to decrease their manhood;

  d. Meza-Luna made the statement, "What will you give me for the return of your "stick ball?", putting great emphasis on "stick ball";

  e. Meza-Luna made the statement, "You know I am NOT flirting with you, don't you?";

  f. Meza-Luna stalked Mr. Silverhorn in the basement where one bathroom is located and then to the parking lot, without cause or reason;

  g. Meza-Luna made repeated comments about Mr. Silverhorn's breechcloth stating that she could see "his stuff";

  h. Meza-Luna stated to that she wanted to have Native American babies and she was running out of time;

  i. Meza-Luna continuously made negative statements to Mr. Silverhorn about men to place him in a position of defense so she could dominate any given situation.

  j. Meza-Luna constantly made statements that she wanted to date a native man and that the native dating population in Williamsburg was extremely small, pointing out that Mr. Silverhorn was the only unmarried person on the unit and that her biological clock was ticking. "I need a native baby quick by a native male.";

  k. During an interpretation, Meza-Luna took the stick ball from Mr. Silverhorn and taunted him. Meza-Luna stuck out her chest to Mr. Silverhorn and

asked, "what are you gonna give me for it?".

24. The frequency and severity of Meza-Luna's behavior continued to increase and worsen to the point that Mr. Silverhorn could not long avoid or ignore her actions.

25. Mr. Silverhorn reported the incidents to Treese. Treese advised Mr. Silverhorn that he would discuss Mr. Silverhorn's concerns with Meza-Luna. However, the actions of Meza-Luna continued, and Mr. Silverhorn was made to feel even more uncomfortable. Silverhorn could find no evidence that Treese had addressed his concerns with Meza-Luna.

26. In fact, it appeared to Mr. Silverhorn that Treese was supporting Meza-Luna and enabling her actions, causing them to intensify.

27. In October 2018, after Meza-Luna's actions continued and worsened, Mr. Silverhorn advised Treese again that there was an issue. Treese set up a meeting with Brenna Lampe (hereinafter "Lampe") of the Human Resources Department and Cheryl Ruschau (herein, "Ruschau"), a manager.

28. During the meeting, Mr. Silverhorn advised management that he was continuously being sexually harassed by a co-worker and that he had already reported several instances to his direct supervisor, Treese, who had taken no action.

29. During the meeting, Lampe attempted to turn the situation against Mr. Silverhorn, advising Mr. Silverhorn that he, in fact, needed to be careful because he did not want to make a female employee feel uncomfortable. At the conclusion of the meeting, Lampe advised Mr. Silverhorn that she would investigate the situation.

30. Mr. Silverhorn requested that he not be scheduled alone with Meza-Luna. Lampe and Ruschau advised Mr. Silverhorn that they would confer with Treese to change the schedule so that Mr. Silverhorn and Meza-Luna were not scheduled together while the matter was investigated.

31. After the meeting, Treese, Lampe, and Ruschau took no further action.

32. Mr. Silverhorn feared that he was going to be terminated or demoted by the Foundation because the Foundation and Treese, his direct supervisor, seemed to support the actions of Meza-Luna. Treese continued to receive numerous complaints from Mr. Silverhorn about the actions of Meza-Luna; yet Treese continued to defend the actions of Meza-Luna, advising Mr. Silverhorn that he felt the need to protect Meza-Luna in this situation because she was female.

33. Treese repeatedly told Mr. Silverhorn that he was being sensitive to the matter, he was misunderstanding Meza-Luna's intent and the matter was all a result of miscommunication

on Mr. Silverhorn's part.

34. Later, Treese advised Mr. Silverhorn that there was no intent to start an investigation into the actions of Meza-Luna by Treese, Lampe, Ruschau, or any other employee of Foundation.

35. Mr. Silverhorn asked Treese if Human Resources would consider the situation serious enough to investigate if the genders were reversed. Treese admitted that if Silverhorn was female, he believed they would take the complaints seriously.

36. Being further empowered by the knowledge that Foundation would take no action against her, Meza-Luna continued to flirt and make inappropriate comments to Mr. Silverhorn, both in private and in front of Foundation guests.

37. The behavior of Meza-Luna did not go unnoticed by other Native American Interpreters.

38. With no other recourse, Mr. Silverhorn reported to Ruschau what Treese said, returned to Human Resources, reported that the situation was worsening and requested that someone intervene on his behalf because he could not continue his position with the constant stress of the harassment.

39. Mr. Silverhorn was advised that Human Resources would take the matter more serious this time, would in fact start an investigation, and would promptly change his schedule as previously requested.

40. Again, no action was taken by anyone at Foundation and the schedule continued to remain the same, enabling Meza-Luna to continue her sexual harassment of Mr. Silverhorn.

41. When Mr. Silverhorn pointed out to Treese that he was not supposed to be scheduled alone with Meza-Luna Treese responded that Mr. Silverhorn should act "like an adult".

42. A meeting was set up between Mr. Silverhorn and Lampe, who admitted that Meza-Luna was creating a hostile work environment and that Lampe needed to act more quickly to resolve the issue.

43. Again, Lampe advised Mr. Silverhorn that she would make sure that Mr. Silverhorn and Meza-Luna were not scheduled together. Mr. Silverhorn asked Lampe if he should still report his concerns to Treese. Lampe said yes.

44. After this meeting, Treese advised Mr. Silverhorn that he realized that he had not been handling the situation properly and he apologized for his inaction.

45. Mr. Silverhorn continued to be scheduled alone with Meza-Luna and Meza-Luna's behavior turned more aggressive. Meza-Luna would send Foundation guests to Silverhorn, directing them to ask why she is not allowed to sit in the same tent as him and why he does not like her. Additionally, Meza-Luna cussed at Mr. Silverhorn when she was scheduled with him.

46. Mr. Silverhorn continued to follow the directions of Human Resources and advise Treese of such behavior. Treese's response was that Meza-Luna was just "exercising her frustrations".

47. Mr. Silverhorn stopped reporting issues to Treese after he walked by Treese's office and heard him speaking with Meza-Luna. Mr. Silverhorn overheard Treese state to Meza-Luna that he and HR do not believe Mr. Silverhorn's allegations and that "**we** will get through this together".

48. With no other options seemingly available, Mr. Silverhorn timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC).

49. After Foundation was notified of the EEOC complaint and action they began to have trainings for the Native American Interpreters which seemed to target Silverhorn and empower Meza-Luna. Mr. Silverhorn was advised by Lampe that she wanted to have weekly meetings with him.

50. During one such meeting, Mr. Silverhorn was the only individual in attendance. The meeting consisted of Lampe and another manager telling Mr. Silverhorn that because of his Native American race and culture he may not have understood Meza-Luna's behavior and had interpreted it improperly.

51. The EEOC issued Silverhorn a "right to sue" letter on August 27, 2019.

### COURT ONE
### HOSTILE WORK ENVIRONMENT - SEXUAL HARASSMENT
### Title VII of the Civil Rights Act of 1964
### 42 U.S.C. § 2000e
(Against Foundation)

52. Mr. Silverhorn incorporates herein by reference the allegations made above as though fully set forth herein.

53. 42 U.S.C. § 2000e-2(a) provides that it is an unlawful employment practice for an employer to "(1) discriminate against any individual with respect to his compensation, terms. Condition, or privileges of employment, because of such individual's ... sex ...; or (2) to limit,

segregate, or classify his employees ... in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's ... sex."

54. Defendant Meza-Luna's conduct was unwelcome.

55. The conduct was based on Mr. Silverhorn's sex.

56. The conduct was sufficiently severe and pervasive to alter Mr. Silverhorn's working conditions of employment and to create an abusive working environment.

57. The conduct was imputable, as outlined in the complaint, to Defendant Foundation.

58. Defendant Foundation, by and through its employees, managers and general managers, violated Mr. Silverhorn's rights under Title VII (42 U.S.C. § 2000e, et seq.), by engaging in actions and/or activities constituting hostile work environment - sexual harassment against Mr. Silverhorn.

59. Defendant Foundation, through its agents and employees, has discriminated against Mr. Silverhorn by sexually harassing Mr. Silverhorn and by failing to implement and enforce a sufficient policy against sexual harassment. These practices of discrimination against Mr. Silverhorn are in direct violation of his rights guaranteed by Title VII of the Civil Rights Act of 1964, 42 U. S. C. § 2000e et seq. and the Civil Rights Act of 1991.

60. These violations by Defendant were based on Mr. Silverhorn's sex and affected the terms, conditions, and/or privileges of Mr. Silverhorn's employment.

61. As a direct and proximate result of the unlawful conduct of Defendant, Mr. Silverhorn has suffered, and will in the future suffer, damages including substantial pecuniary losses, loss of career opportunities, promotions and advancements; loss of retirement benefits; loss of fringe benefits; embarrassment; humiliation and inconvenience; severe mental anguish, stress; pain and suffering; loss of enjoyment of life and other non-pecuniary injury in amounts to be determined at trial.

62. In addition, Mr. Silverhorn has incurred, and continues to accrue, attorneys' fees and other costs related to the prosecution of this action.

## COUNT TWO
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
(Against Meza-Luna)

63. Mr. Silverhorn incorporates herein by reference the allegations made above as though fully set forth herein.

64. The conduct of the Defendant Meza-Luna, as described above, was extreme and outrageous. Such behavior was conducted with deliberate disregard of the high degree of probability of the severe emotional distress that such behavior would cause Mr. Silverhorn.

65. As a direct and proximate result of Defendant's extreme, outrageous and malicious conduct Mr. Silverhorn suffered severe mental distress and anxiety, nervousness, humiliation, allied mental issues, and physical injuries.

66. Mr. Silverhorn has suffered weight gain and loss, and insomnia.

67. Mr. Silverhorn had lost his confidence and his sense of dignity is destroyed.

68. Punitive damages as described below are warranted for this and the above causes of action.

## COUNT THREE

### VIOLATION FOR RIGHTS SECURED
### 42. U.S.C. SECTION 1983
(Against Foundation)

69. Mr. Silverhorn incorporates herein by reference the allegations made above as though fully set forth herein.

70. Defendants deliberately acted against Mr. Silverhorn as outlined above because of his gender and race. Mr. Silverhorn was deprived by Defendants of his Constitutional rights and protections by the laws of the United States.

71. Defendants were in violation of 42 U.S.C. § 1983 by denying Silverhorn his rights afforded by Title VII and equal protection of the law set forth by the Fourteenth Amendment to the United States Constitution.

72. Defendant Foundation held policy making authority and ratified deliberate policies of discrimination against males who complained of sexual harassment or hostile work environment.

73. As an actual and proximate result of the Defendants acts alleged herein, Mr. Silverhorn has suffered pecuniary loss, emotional pain and suffering, mental anguish, humiliation, embarrassment and extreme stress.

74. The conduct of the Defendants was recklessly indifferent to federal laws established to protect Mr. Silverhorn's rights. The named Defendants acted willfully and maliciously warranting punitive damages to punish and deter the Defendants and others from the same egregious actions.

## PRAYER FOR RELIEF

WHEREFORE, Mr. Silverhorn prays for judgment against the Defendants and each of them, jointly and severally, as follows:

1. An Order permanently enjoining and restraining Defendants, their agents, officers, servants and employees from sexually harassing other employees; and from failing to implement and enforce a sufficient policy against sexual harassment;

2. Compensation for back pay, front pay, and compensation for other lost employment benefits in an amount to be later determined;

3. Costs and reasonable attorneys' fees against Defendants;

4. That the Defendants, their agents and employees be enjoined from depriving Mr. Silverhorn and other males of equal employment opportunities under Section 706(g) of the Civil Rights Act of 1964, 42 U. S. C. § 2000e(g), which empowers this Court to permanently enjoin the Defendants from any and all violations of the rights that Mr. Silverhorn herein seeks to assert under Title VII of the Civil Rights Act of 1964, as amended.

5. Compensatory and punitive damages in the amount of Seven Hundred Thousand Dollars ($700,000.00) per count above; and

6. Any and all additional relief as the Court may deem appropriate.

Date: February 18th, 2020

Respectfully submitted,

/s/William Akers
The Akers & Cleator Law Group P.L.L.C.
291 McLaws Circle, Suite 1
Williamsburg, VA 23185
peyton@aclawva.com
Tel: 757-707-8838
Fax: 757-707-8828

Shira L. Hedgepeth
The Law Office of Shira Hedgepeth, PLLC
PO Box 514
Cullowhee, NC 28723
Tel: 828-585-5044

Fax: 828-585-6097
shira@legal-decisions.com

# CERTIFICATE OF SERVICE

    I hereby certify that on the 18th day of February 2020, a true copy of the foregoing was filed with the Court using the CM/ECF system, which will send notification of such filing to the following:

Dana L. Rust (VSB # 28408)
Heidi E. Siegmund (VSB # 89569)
Summer L. Speight (VSB # 80957)
MCGUIREWOODS LLP
Gateway Plaza
800 East Canal Street Richmond
Virginia 23219
(Office) (804) 775-1000
(Fax) (804) 775-1061
drust@mcguirewoods.com
hsiegmund@mcguirewoods.com
sspeight@mcguirewoods.com

Robert W. McFarland (VSB # 24021)
MCGUIREWOODS LLP
101 W. Main Street
Suite 9000 World Trade Center
Norfolk, VA 23510
(Office) (757) 640-3716
(Fax) (757) 640-3966
rmcfarland@mcguirewoods.com

    /s/William Akers_____
William Akers
The Akers & Cleator Law Group P.L.L.C.
291 McLaws Circle, Suite 1
Williamsburg, VA 23185
peyton@aclawva.com
Tel: 757-707-8838
Fax: 757-707-8828

Shira L. Hedgepeth
The Law Office of Shira Hedgepeth, PLLC
PO Box 514
Cullowhee, NC 28723
Tel: 828-585-5044
Fax: 828-585-6097
shira@legal-decisions.com

# EXHIBIT A

EEOC Form 161-A (11/16)     **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## NOTICE OF RIGHT TO SUE
*(CONCILIATION FAILURE)*

| To: | Talon C. Silverhorn<br>139 Wichita Lane<br>Williamsburg, VA 23188 | From: | Norfolk Local Office<br>200 Granby Street<br>Suite 739<br>Norfolk, VA 23510 |
|---|---|---|---|

☐ *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 437-2019-00185 | Alexander Perez, Investigator | (757) 441-3475 |

### TO THE PERSON AGGRIEVED:

This notice concludes the EEOC's processing of the above-numbered charge. The EEOC found reasonable cause to believe that violations of the statute(s) occurred with respect to some or all of the matters alleged in the charge but could not obtain a settlement with the Respondent that would provide relief for you. In addition, the EEOC has decided that it will not bring suit against the Respondent at this time based on this charge and will close its file in this case. This does not mean that the EEOC is certifying that the Respondent is in compliance with the law, or that the EEOC will not sue the Respondent later or intervene later in your lawsuit if you decide to sue on your own behalf.

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Enclosures(s)     Norberto Rosa-Ramos,<br>Local Office Director     8/27/19 (Date Mailed)

cc:    Sharon A. Dorsey<br>Director of HR Diversity and Inclusion<br>THE COLONIAL WILLIAMSBURG FOUNDATION<br>P. O. Box 1776<br>Williamsburg, VA 23187

Ariel L. Hedgepeth, Esq.<br>P.O. Box 563<br>Norge, VA 23127

Enclosures(s)

cc: Sharon K. Reyes, Esq.
150 W. Main Street
Suite 2100
Norfolk, VA 23510